IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER PYLES,                           )
                                             )
        Plaintiff,                         )
                                             )
vs.                                          )   Case No.   11-cv-378-MJR-SCW
                                             )
MAGID FAHIM, and WEXFORD                     )
HEALTH SOURCES, INC.,                        )
                                             )
        Defendants.                        )

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on Defendants Magid Fahim's and Wexford Health Sources, Inc.'s Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 51 & 52). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Defendants' motion for summary judgment (Doc. 51 & 52).

### II.   Findings of Fact

**A.   Procedural Background**

On May 6, 2011, Plaintiff filed a Complaint against various Defendants for claims of deliberate indifference (Doc. 1). Pursuant to **28 U.S.C. §1915A**, District Judge Michael J. Reagan conducted a preliminary review of Plaintiff's Complaint on August 9, 2012 (Doc. 14). At that time, the Court dismissed some of the claims, leaving only the deliberate indifference claims against Defendant Fahim and Defendant Wexford.

As to Plaintiff's deliberate indifference claims against Fahim and Wexford, Plaintiff alleges that on July 25, 2009, Plaintiff slipped and fell down a flight of stairs while housed at Menard Correctional Center (Doc. 14). Plaintiff sustained injuries to his neck and spine in the fall, and was transported to Chester Memorial Hospital and then subsequently airlifted to St. Louis University Hospital for treatment (*Id.*). He remained at St. Louis University Hospital until July 30, 2009 (*Id.*). Plaintiff was, at that time, released back to Menard Correctional Center.

Upon his return to Menard, Plaintiff was treated by Defendant Fahim, who Plaintiff alleges continually refused to allow Plaintiff to see an outside specialist or have an MRI in order to reduce health care costs at the prison (*Id.*). Plaintiff alleges Defendant Fahim's treatment of Plaintiff was a direct result of Defendant Wexford's written policy to save money (*Id.*). Defendant Fahim allegedly denied Plaintiff certain treatments because Defendant Wexford provides Fahim with monetary incentive for saving health care costs at the prison. Plaintiff alleges that Defendants' deliberate indifference has caused him severe and worsening pain in his lower spine (*Id.*).

Now before the Court for a Report and Recommendation is a motion for summary judgment filed by Defendants (Doc. 51 & 52). The Defendants' motion alleges Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act pursuant to **42 U.S.C. §1997e(a).** Specifically, Defendants argue that Plaintiff did not follow the proper steps to exhaust his administrative remedies regarding his back injury and treatment by Defendant Fahim because he did not receive a counselor or grievance officer response before submitting the grievance to the ARB. Plaintiff, however, has filed a Response (Doc. 75) arguing that he did all that he could to exhaust his administrative remedies and that he sent an emergency grievance to the warden which was never returned to him.

**B.** **Pavey Hearing**

In accordance with *Pavey v. Conley*, the Court conducted an evidentiary hearing on April 29, 2013. *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008).** The crux of the issue before the Court was whether Plaintiff received his emergency grievance back from the warden or whether he was thwarted in his attempts to exhaust his administrative remedies regarding his treatment for his back.

Plaintiff testified that although he submitted his emergency grievance regarding his medical treatment to the warden on August 4 2009, he never received a response back from the warden. He indicated that was the reason he was not able to submit a copy of the August 4, 2009 grievance to the Court because he never received it back. He eventually wrote a letter to the grievance office asking about the status of the grievance, and he received a letter from Jeannette Cowan, Grievance Office Supervisor, on October 13, 2009, informing him that the grievance was returned to him on August 14, 2009 (Doc. 75 Ex. B-3). Defendants were not able to produce the grievance and the grievance office has no record of it ever being filed with them. He then appealed that decision to the ARB, which was returned to him with directions to first submit his grievance to the grievance officer and warden before proceeding with an appeal to the ARB (Doc. 75 Ex. B-6). Plaintiff also indicated that he submitted another grievance regarding his medical treatment on February 28, 2010 (Doc. 75 Ex. D-1). He did receive a response from the counselor as to that grievance on March 1, 2010 (Doc. 75 Ex. D-1; D-3). Plaintiff also testified that he tried to submit that grievance to the grievance officer but it was never returned. In light of the grievance never being returned, Plaintiff tried to appeal the grievance to the ARB and the ARB received said grievance on April 20, 2010 (Doc. 75 Ex. D-4). The ARB ultimately denied the grievance because Plaintiff did not follow the proper procedures of first submitting his grievance to the grievance office. Plaintiff testified that he did all he

could to exhaust his administrative remedies because the grievance office continually failed to return his grievances.

Defendants presented evidence that Dr. Fahim was not director at Menard at the time that Plaintiff filed his first grievance. Dr. Fahim did not arrive at Menard until late September.[1]

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." **Wragg v. Village of Thornton, 604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely

---

[1] The Court notes that Defendants' attorney offered an affidavit from Defendant Fahim regarding his start date at Menard. However, counsel ultimately did not move to have it admitted into evidence and the Court suggested the exhibit would have been untimely anyway since the exhibit was not offered with Defendants' initial filings.

unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742**. Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, **649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.  **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plyes was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill.**

**Administrative Code §504.800 et seq.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where

reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to follow proper procedures for exhausting. Defendants point to two grievances sent directly to the ARB on November 12, 2009 and April 2, 2009 regarding his medical treatment for his back, which were returned to him for failure to submit the grievance officer's and warden's response. Defendants argue that this shows that Plaintiff failed to exhaust his administrative remedies.

The undersigned, however, finds Plaintiff's testimony that he tried to fully exhaust those grievances, but was prevented from doing so, reliable. Plaintiff testified that he sent his emergency grievance regarding his medical treatment to the warden on August 4, 2009. He never received a response from the warden. In October, Plaintiff wrote a letter to the grievance officer asking about the status of that grievance. Plaintiff testified that he was informed by letter on October

13, 2009 that the grievance had been deemed not to be an emergency and had been sent back to him on August 14, 2009 with instructions to file the grievance in the normal manner. Plaintiff then wrote a letter to the ARB seeking a review of that denial, which the ARB returned to him for failing to include the grievance officer's and chief administrative officer's response. Plaintiff testified he experienced a similar problem with his February 28, 2010 grievance in which he received a response from his counselor but never received a response from the grievance officer. That grievance Plaintiff also mailed to the ARB but it was returned to him for failure to submit his grievance officer's and chief administrative officer's response. The undersigned found this testimony to be credible and reliable.

Plaintiff's testimony is further supported by the evidence in the record. There is evidence in the Cumulative Counseling Summary that Plaintiff met with his counselor and discussed his missing emergency grievance on October 5, 2009 (Doc. 75 Ex. B-1). Plaintiff also wrote a letter to the grievance office regarding his grievance, and was informed on October 13, 2009 that his grievance had been denied as an emergency and returned to him on August 14, 2009 (Doc. 75 Exs. B-2, B-3, and B-4). Thus, there is evidence in the record that Plaintiff did not receive his emergency grievance back from the warden as he continued to question the status of his August 4, 2009 grievance. When Plaintiff learned of the fate of his emergency grievance, there is also evidence that he attempted to submit another grievance on the same medical issues. Plaintiff filed a grievance on October 19, 2009 in which he discusses his original August 4, 2009 grievance and his failure to receive a response from that grievance, further supporting his testimony (Doc. 75 Exs. C-1 & C-2).[2] Further, there is evidence that Plaintiff went ahead and tried to exhaust the grievance, without actually having a copy of the August 4, 2009 grievance, by filing a response with the ARB (Doc. 75 Ex. B-6). It is clear to the

---

[2] Although it is not clear to the Court that this grievance was properly exhausted as it was rejected by the ARB for failing to attach the grievance officer's and chief administrative officer's response, the grievance is further evidence that he filed an emergency grievance in August that was not returned to him.

Page 8 of 11

undersigned from Plaintiff's testimony and the corresponding documents in the record that Plaintiff truthfully testified that he submitted an emergency grievance on August 4, 2009 that was never returned to him.

As to the February 28, 2010 grievance, there is also evidence that supports Plaintiff's testimony that he never received a response from the grievance office. Plaintiff's cumulative counseling summary indicates that the grievance was returned to him by his counselor on March 1, 2010 (Doc. 75 Ex. D-3). He stated that he sent the grievance to the grievance officer, but having never received a response he sent the grievance to the ARB which was received on April 20, 2010 (Doc. 75 Ex. D-4).

Having followed administrative procedures and filed his emergency grievance with the grievance office to give to the warden for initial review, Plaintiff was not required to further exhaust his remedies when he failed to receive a response from the warden. **See *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); *Brown v. Darnold*, 2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).** On each occasion, even though Plaintiff was not returned his grievances, he still tried to further pursue his issues with the ARB regarding the issues raised in his grievances. However, for exhaustion purposes Plaintiff was not required to pursue his grievances any farther after not receiving them back from the grievance office as he had exhausted all of the administrative remedies available to

him under 42 U.S.C. § 1997e(a). *See Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).**

Defendants argue that this was the wrong approach, as to the emergency grievance, and that Plaintiff should have submitted his grievance through the normal grievance procedures in order to exhaust. While for exhaustion purposes Plaintiff was not required to pursue his grievance further after not receiving them back from the grievance officer, as to the emergency grievance he was also not required to proceed with the normal grievance procedure, even if it had been properly returned to him. He could have simply sought a review of the warden's decision, as he did in this case, through the ARB. *See Thorton v. Snyder*, **428 F.3d 690, 694 (7th Cir. 2005);** *Glick v. Walker*, **385 Fed. Appx. 579, 583, 2010 WL 2775864 at \*4 (7th Cir. 2010) (Finding that "defendants' position that [Glick] was required to go back to the grievance officer and start over after his emergency grievance had been rejected by the warden and the ARB is at odds" with the administrative code and case law as "an inmate who seeks emergency review…has no obligation to resubmit the grievance through the normal channels.").** Here Plaintiff did just that. Once he learned that his emergency grievance was no longer in the warden's possession and had allegedly been returned with an instruction that the grievance was not an emergency and to pursue his grievance through the normal grievance process, Plaintiff sought review of that decision from the ARB. The ARB, however, returned the grievance for failing to obtain the grievance officer's and chief administrative officer's response. Thus, at that point, Plaintiff had done everything that the administrative code required. *See* **20 Ill. Admin. Code §504.840.**

Defendants also make much of the fact that Defendant Fahim was not on staff at Menard when Plaintiff filed his original emergency grievance on August 4, 2009. However, the undersigned notes that Defendants did not raise this argument in their original motion and the Court found the affidavit defense counsel sought to admit untimely. Further, the Court notes that

Defendant Fahim was the director of medical services at Menard in November 2009 when Plaintiff sought review of his emergency grievance regarding his medical treatment from the ARB and was mentioned in Plaintiff's February 28, 2010 grievance which also discussed his medical treatment and specifically named Defendant Fahim. Thus, even if the affidavit had been accepted by the Court, the result would have been the same. The undersigned finds that Defendants have failed to meet their burden of showing that Plaintiff failed to exhaust his administrative remedies and thus **RECOMMENDS** that the Court **DENY** Defendants' motion for summary judgment (Docs. 51 & 52)

### IV.   Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court find that Plaintiff has done all that is required to exhaust his administrative remedies and **DENY** Defendants' motion for summary judgment (Docs. 51 & 52).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 **(7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **May 20, 2013**.

**IT IS SO ORDERED**.
DATED: May 1, 2013.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge