IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER PYLES,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) ) Case No.  11-cv-378-SCW |
| **MAGID FAHIM and WEXFORD HEALTH SOURCES, INC.,** | ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

Before the Court is a motion for summary judgment (Docs. 116 and 117) filed by Defendants Magid Fahim and Wexford Health Sources, Inc.  Defendants argue that they are entitled to summary judgment on Plaintiff's deliberate indifference claims.  Plaintiff has filed a Response (Docs. 127 and 129) to Defendants' motion.  Defendants have filed a Reply (Docs. 130 and 131).  Plaintiff objects to the reply brief (Doc. 132).  Based on the following, the Court **GRANTS** Defendants' motion for summary judgment.

### II.   Background

On June 28, 2012, Plaintiff filed his first Amended Complaint (Doc. 13) for deliberate indifference claims against Defendants Magid Fahim and Wexford Health Sources, Inc.  Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs for improper treatment of his back pain.  Specifically, that Defendant Fahim failed to send Plaintiff to a specialist or order an MRI to pinpoint the source of his pain and that this failure was because of Wexford's policy to cut costs in providing medical treatment.  The following facts related to Plaintiff's claims took

place while Plaintiff was housed at Menard Correctional Center.

On July 25, 2009, at Menard Correctional Center, Plaintiff fell down stairs injuring his back. Plaintiff was transferred from the Menard Healthcare Unit to Chester Memorial Hospital and ultimately flown to Saint Louis University Hospital ("SLU") (Doc. 117 Ex. B at pp. 14-19; Ex. A at pp. 28-29). Plaintiff remained at SLU until July 30, 2009. While there, he received four CT scans on July 25, 2009, six MRI views on July 26, 2009, an angiogram, and an additional three CT scans and three MRIs on July 29, 2009 (Doc. 117 Ex B at pp 52-60, 67, 93, 105-107, 114-16, 147-149). Plaintiff was then returned to Menard's health care unit where he remained for five days. During the rest of 2009, he saw multiple health care staff and four different physicians. As Defendants note, Plaintiff was seen by Dr. Fuentes on August 7, 2009 and September 29, 2009; Dr. Krief on August 11, 2009, Medical Director Feinerman on August 12, 2009 and September 17, 2009, and Dr. Nwaobasi on September 9, 2009 and December 18, 2009 (Doc. 117 Ex. C at pp. 112-120, 122, 129). Plaintiff received an x-ray on September 17, 2009 which indicated degenerative changes with minimal hypertrophic spurring in his cervical spine and no facture or significant arthritic change in his lumbar spine (Doc. 117 Ex. C at pp. 120, 571).

On September 29, 2009, Defendant Fahim was placed at Menard Correctional Center to fulfill the role of Site Medical Director. The Site Medical Director position leads and oversees the medical practice at their facility to ensure high-quality medical care. One of the responsibilities of the Site Medical Director is also to identify and implement cost reduction strategies (Doc. 129 Ex. N at p.11). Fahim first saw Plaintiff on January 12, 2010 (Doc. 129 Ex. A-2). Fahim noted a normal neurological exam, motor function, and back and lower extremities. He noted no pain in a straight leg raise test and no muscle wasting. Fahim prescribed Flexeril and Ultram and educated Plaintiff on proper exercise. He set a follow-up for three months (*Id.*).

On January 28, 2010, Plaintiff was seen by Nurse Practitioner Pollion (Doc. 129 Ex. A-3 at p. 15). Plaintiff saw the nurse practitioner because he claimed that he wanted an MRI. Pollion noted that he had been seen by an MD on January 21, 2010 with no such recommendation, with a follow up of three months (*Id.*). Pollion noted in the "plan" section that the plan was to follow up per the MD's previous order (*Id.*). Pollion saw Plaintiff again on February 3, 2010 with the subjective portion of Pollion's notes indicating that Plaintiff wanted to be scheduled for a test. Pollion noted that per the previous entry, Plaintiff would be seen by Fahim (*Id.*).

Plaintiff was next seen by Dr. Fuentes on April 28, 2010 (Doc. 117 Ex. C at p. 151). Dr. Fuentes noted that Plaintiff had a good steady gait, but indicated that Plaintiff had a degenerative disease of his c-spine. Neurontin and Tramadol was prescribed (*Id.*). Dr. Fuentes noted that Plaintiff wanted to have an MRI and thus referred him to Dr. Fahim for the possible MRI (*Id.*). Fahim saw Plaintiff on May 18, 2010. He noted no muscle wasting or loss of sensation as well as noted a full range of movement. He observed no pain and that muscle power was normal. He questioned why Plaintiff had back pain and ordered x-rays of his cervical, thoracic, and lumbar region (Doc. 117 Ex. C at p.155). X-rays were taken on May 25, 2010 (*Id* at p. 156). The x-rays noted no acute bone abnormalities with minimal degenerative changes in the lumbar spine, but mild degenerative changes in the cervical and thoracic spine (*Id.* at p. 572).

On August 20, 2010, Plaintiff was seen by a nurse practitioner for complaints of back pain. The nurse practitioner noted that Plaintiff wanted an MRI. He stated he had constant sharp back pain and back exercises made it worse (Doc. 117 Ex. C at p.167). The nurse practitioner noted that Plaintiff was ambulating independently and had no spine deformity and recommended warm compresses and back exercises (*Id.* at pp. 167-168). Plaintiff was referred to Fahim for evaluation and the nurse practitioner noted the assessment of Plaintiff as chronic back pain.

On August 26, 2010, Plaintiff overdosed on Ultram, informing health staff that he took twenty to thirty tablets, five at a time throughout the day, causing a seizure (Doc. 117 Ex. C at pp.169-70). Plaintiff noted that he was depressed and he was referred to mental health (*Id.* at pp. 171-172). The medical records note that Plaintiff was scheduled to be seen by an RN and psych staff in September but on both instances he refused the passes and would not come out of his cell (*Id.* at p. 177).

Plaintiff next saw a medtech on October 19, 2010 where he complained of back pain from his previous injury on the stairs. The medtech noted no swelling or limited movement (Doc. 117 Ex. C at p.178). Plaintiff was again seen by Defendant Fahim on October 26, 2010 for his back pain (*Id.* at p. 180). Fahim noted that Plaintiff had mild lower back tenderness but noted that he would not prescribe Ultram for Plaintiff's safety as he had previously abused it. He noted a negative straight leg raising test and prescribed Prednisone, Neurontin, Flexeril, and Mobic. He also educated Plaintiff on proper exercise and stretching (*Id.*).

On March 16, 2011, Plaintiff saw Dr. Platt for pain to his lower spine (Doc. 117 Ex. C at p. 191). Dr. Platt prescribed him Motrin. Dr. Nwaobasi saw Plaintiff on April 23, 2011, who noted mild degenerative osteoarthritis. Nwaobasi prescribed Plaintiff Motrin, Flexeril, and Neurontin. Nwaobasi saw Plaintiff again on May 14, 2011 and against noted degenerative osteoarthritis (*Id.* at p. 198). Plaintiff was referred to Defendant Fahim in order to discuss what Nwaobasi noted as Plaintiff's "demand for MRI of the spine." (*Id.*). Fahim reviewed Plaintiff's file on May 18, 2011 and noted that he did not need to be seen at that time. Fahim noted that he had seen Plaintiff on multiple occasions and other MDs had reviewed Plaintiff and none had recommended an MRI (Doc. 117 Ex. C at p.199).

Dr. Fuentes saw Plaintiff on July 27, 2011 on Plaintiff's complaint of lower back pain

(Doc. 117 Ex. C at p. 204). Fuentes prescribed Naproxen for his pain (*Id.*). On August 11, 2011, Fuentes changed the prescription to "DOT" which means "direct observation treatment." (*Id.*). Defendants describe this as meaning Plaintiff had to be directly observed taking his medication instead of being allowed to self-medicate from a pack of pills. Defendants note that Dr. Fahim left Menard and Wexford on August 19, 2011. Although they state that neither medical director who came after Fahim, including Dr. Shepherd and Dr. Shearing, ordered an MRI or specialist for Plaintiff, neither party has attached current medical records. The last notation in the medical record comes from August 11, 2011.

### III. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004) (abrogated on other grounds by** *Spiegla II*, **481 F.3d at 966 (7th Cir. 2007)).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

### IV. <u>Analysis</u>

#### A. Deliberate Indifference

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)).** In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

Defendants do not argue that Plaintiff's chronic back pain constituted a serious

medical condition, instead they argue that they were not deliberately indifferent to that condition. The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)).** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985).** Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno,* **414 F.3d at 653**. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted).** An inmate does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000)).**

The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious

risks.'" *Roasrio v. Brawn*, 670 F.3d 821-22 (7th Cir. 2012) (*Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

**B. Magid Fahim**

Defendant Fahim argues that he is entitled to summary judgment because there is no evidence in the record showing that he was deliberately indifferent to Plaintiff's medical needs. Plaintiff argues that Fahim is deliberately indifference because his chosen course of treatment is ineffective.

Here, the Court finds that Defendant Fahim is entitled to summary judgment because there is no evidence in the record which suggests that Defendant was deliberately indifferent to Plaintiff's back pain while Fahim was stationed at Menard Correctional Center. In fact, the evidence in the record suggests that Fahim addressed Plaintiff's back pain and tried different medications in order to help control the pain in his back. The evidence in the record indicates that Dr. Fahim met with Plaintiff on at least three occasions during Fahim's twenty-three months at Menard Correctional Center. On those occasions, Dr. Fahim observed Plaintiff's motor function and pain and prescribed Plaintiff varying drugs and instructed him on exercising and stretching. Dr. Fahim also ordered additional x-rays of Plaintiff as Fahim questioned the cause of his back pain, indicating "back pain??" in the assessment portion of the medical notes (Doc. 117 Ex. C at p. 155). The x-rays revealed mild degenerative changes and Plaintiff was noted in subsequent visits with doctors as having osteoarthritis. In addition to conducting exams in order to pinpoint the cause of Plaintiff's pain, each time Defendant Fahim met with Plaintiff, he prescribed him different medications. On his first visit with Plaintiff he prescribed Flexeril and Ultram while on his third visit he prescribed him

Prednisone, Neurontin, Flexeril, and Mobic. This shows that Defendant Fahim was trying different medications to determine which medications would control Plaintiff's pain. The record clearly indicates that Fahim continued to treat Plaintiff and actively tried different medications and treatments to improve Plaintiff's pain, rather than continue with an ineffective course of treatment.

Further, the evidence suggests that not only did Fahim himself attend to Plaintiff's medical needs but various other doctors and medical staff at Menard examined Plaintiff during the time that Defendant Fahim was medical director at Menard Correctional Center. Plaintiff was seen by at least three doctors during the twenty-three months that Fahim was medical director at Menard. Plaintiff also saw a nurse practitioner and medtech on at least two other occasions. Each time Plaintiff was seen, the medical staff evaluated his back pain and prescribed various medications to control his back pain. Defendant Fahim also reviewed Plaintiff's medical records after being seen by Dr. Nwaobasi in April and determined that he did not need to see Plaintiff for a follow-up appointment because there were no new issues to address. The evidence in the record suggests that Plaintiff was receiving medical treatment for his back pain while Dr. Fahim was medical director and that Fahim was taking steps to identify the source of Plaintiff's pain and find an effective treatment for his pain. Such conduct does not constitute deliberate indifference. **Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010)(case survived summary judgment where evidence in the record suggested that doctor had not identified effective pain medication or the cause of tooth pain, but refused to refer to seek obvious alternative of referring inmate to a dentist); Arnett v. Webster, 658 F.3d 742, 759 (7th Cir. 2011) (not deliberately indifferent when took measures to address the pain by providing medication, even if ineffective, in the short time as record didn't show that "no minimally competent professional would have provided this regime of treatment"); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866 (7th Cir. 2013) (not**

**deliberately indifferent when inmate examined often, x-rays taken, and medications prescribed).**

Plaintiff maintains that Defendant Fahim was deliberately indifferent because he continued in a course of treatment that was ineffective and because he refused to refer Plaintiff for an MRI. While it is true that a doctor's continuation of ineffective treatment can arise to the level of deliberate indifference, see *Kelley v. McGinnis*, **899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective);** *Greeno v. Daley*, **414 F.3d 645, 654 (7th Cir. 2005),** there is no evidence in the record here to suggest that Defendant Fahim was continuing on such a course knowing that his treatment was ineffective. In fact, the record reflects that Fahim and other medical staff continued to alter Plaintiff's medications for his pain. The medical records also indicate that Dr. Fahim coached Plaintiff on stretches and exercises at various times and that other medical staff suggested alternative treatments for his pain, including warm compresses. The evidence before the Court suggests that Dr. Fahim was not continuing with ineffective treatment, but actively sought to find an effective medication for his pain.

As to Plaintiff's indication that Dr. Fahim failed to order an MRI of Plaintiff's back, the Court finds that this does not amount to deliberate indifference, but rather appears to be a mere disagreement on the proper course of treatment. See *Berry*, **604 F.3d at 441;** *Estate of Cole v. Fromm*, **94 F.3d 254, 261 (7th Cir. 1996).** While Plaintiff maintains that the nurse practitioner made a recommendation of an MRI and that Plaintiff was referred to Fahim for scheduling an MRI, the medical records show that it was Plaintiff who requested the MRI. The notes from the nurse practitioner on August 20, 2010 indicate that Plaintiff "wants an MRI" (Doc. 117 Ex. C at p. 167). The medical records from May 14, 2011 with Dr. Nwaobasi indicates that Plaintiff demanded an MRI (*Id.* at p.198). There is no indication in the records that any of the doctors recommended that Plaintiff

have an MRI. In fact, Dr. Fahim noted in Plaintiff's medical chart on May 18, 2011 that none of the physicians who had seen Plaintiff had ever recommended an MRI (*Id.* at p.199).

Plaintiff does offer a notarized letter from his family practitioner, Dr. Teresa Pecherek-Rogers, which indicates that she would recommend Plaintiff for an MRI. However, the Court notes that Plaintiff's family practitioner has not seen Plaintiff since he entered the Illinois Department of Corrections and does not indicate that she has knowledge of his current medical history. Further, Dr. Pecherek-Rogers indicates that she was made aware only of Plaintiff's injury in July 25, 2009 and states she would have ordered an MRI for his back. Plaintiff, however, did receive MRIs on two different days, at the time of his injury.[1] Dr. Pecherek-Rogers' letter does not indicate whether she would order an MRI given his current back pain. Thus, there is no evidence in the record to suggest that an MRI was necessary for Plaintiff's current medical complaints or that refusing to order an MRI amounted to deliberate indifference. *Ray*, 706 F.3d at 866 **(failure to order an MRI not deliberate indifference where inmate did not produce evidence that "norms of professional conduct call for using an MRI to determine whether a diagnosis of arthritis based on x-ray film may be mistaken").** Accordingly, the Court finds that Defendant Fahim is entitled to summary judgment on Plaintiff's claims against him.

C.     **Wexford Health Sources, Inc.**

Defendant Wexford Health Sources, Inc. also maintains that it is entitled to summary judgment on Plaintiff's deliberate indifference claim. Wexford can be held liable for deliberate indifference to Plaintiff's medical care only if it maintained a policy or custom that violated Plaintiff's rights. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) **(corporations that contract**

---

[1] Plaintiff indicates in his responsive brief (Doc. 129) and deposition (Doc. 129 Ex. F at pp. 33, 35-36) that a specialists at SLU Hospital informed him that the MRI would not indicate an injury to his spine due to the swelling present at the time. However, none of the medical records from SLU or the MRI records support Plaintiff's alleged conversation and Plaintiff has offered no evidence to support his claim.

with prison and jail facilities to provide medical care are treated as municipalities for purposes of § 1983); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) ("municipality may be liable for harm to persons incarcerated under its authority 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of prisoners.'"). Such a policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Minix*, 597 F.3d at 832. In other words, the corporation can be held liable when the implementation of the policy or custom inflicts an injury on the plaintiff. *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

  Here, Plaintiff merely points to Wexford's Pain Management policies (Doc. 129 Ex. L) and Orthopedic Surgery Guidelines (Doc. 129 Ex. M) as evidence of his claim that Wexford's policies violated his rights. Plaintiff's Amended Complaint alleges that Wexford has a written policy to save money which violated his rights (Doc. 14 at p. 3). The policies that Plaintiff has pointed to do not establish a written policy to save money or provide an incentive, by their nature, to the physicians to save money by limiting care or denying certain tests or procedures. Neither of the policies Plaintiff points to are policies which would have caused Plaintiff's alleged constitutional violations. Further, as the Court has previously stated, there is no evidence that Plaintiff's constitutional rights were violated as Plaintiff has been seen by numerous medical staff at Menard, received x-rays, and prescribed varying medication to address his back pain. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (inmate failed to establish a constitutional problem with his medical treatment "and thus did not suffer actionable injury from the policy he attributes" to Wexford).

**D.     Injunctive Relief**

The Court notes that Plaintiff's Complaint also seeks injunctive relief for the ongoing pain that he continues to suffer from his chronic back pain.   Specifically, Plaintiff seeks an MRI and a back exam by a specialist.   However, there are no medical records dating to present.   The last recorded entry in the medical records is from August 17, 2011 and Defendant Fahim left the employee of Wexford and Menard on August 19, 2011.   Thus, there is no evidence in the record that Defendants' actions from August 2011 to the present constitute deliberate indifference.   The Court, accordingly, finds that Defendants are also entitled to summary judgment on Plaintiff's claim for injunctive relief as there is no evidence that Defendants are currently ignoring or failing to treat Plaintiff's back pain.[2]

## V.     Conclusion

Accordingly, the Court **GRANTS** the summary judgment motion filed by Defendants Fahim and Wexford Health Sources, Inc.   As no other Defendants or claims remain in this case, the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**.
DATED: March 14, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge

---

[2] The Court notes that Plaintiff currently has another case pending in this district, **Pyles v. Nwaobasi, Case No. 13-cv-770-MJR-SCW,** which alleges deliberate indifference by subsequent medical professionals at Menard for their ineffectiveness in treating his back pain from 2012 to the present. Plaintiff alleges that his continued current treatment is not working but that medical staff refuses to provide him with additional testing and different medication (Case No. 13-cv-770 at Doc. 7).   These facts, if the evidence supports it, could very well show deliberate indifference for the medical staff's continued failure to provide Plaintiff with adequate treatment, if evidence, developed in that record, shows that staff have continued with the same course of treatment which has proven ineffective.   **See Greeno v. Daley, 414 F.3d 645, 654-5 (7th Cir. 2005) (two year delay in referring to a specialist and refusal to alter course of treatment when treatment was obviously not working can amount to deliberate indifference).**   In this case, however, there is simply no evidence in the medical records that medical staff have continued with ineffective treatment.